**VGS CORPORATION d/b/a Southland Oil Company and Globe Asphalt Co., Inc., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF ENERGY and John S. Herrington, as Secretary of Energy, Defendants.**

**Civ. A. No. J81–0170(B).**

United States District Court, S.D. Mississippi, Jackson Division.

July 12, 1985.

As Amended Aug. 20, 1985.

---

Tom Tardy, Jackson, Miss., Edwin Jason Dryer, Jack L. Lahr and Dennis Henigan, Washington, D.C., for plaintiffs.

Samuel Soopper, U.S. Dept. of Energy, Washington, D.C., Daniel B. Lynn, Asst. U.S. Atty., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

The Court has before it the following Motions:

(1) Motion of Plaintiffs, VGS Corporation, d/b/a Southland Oil Company and Globe Asphalt Co., Inc. (hereinafter collectively referred to as "Southland") for Partial Summary Judgment; (2) Motion of Defendant, United States Department of Energy ("DOE") to Dismiss; and (3) Motion of DOE to stay.

1. *Motion of Southland for Partial Summary Judgment and Motion of DOE to Dismiss*

Southland seeks a declaratory judgment that the DOE has an unconditional and non-discretionary obligation to implement an order issued by the Federal Energy Regulatory Commission (FERC) on May 8, 1984, requiring DOE to restore to Southland $5,956,499.00 which DOE wrongfully required Southland to pay under the Crude Oil Entitlements Program. According to Southland the DOE has not only failed to implement the FERC Order, but has also unilaterally imposed additional conditions to obtaining relief by virtue of its January 9, 1985, decision which provides that the

Office of Hearing and Appeals ("OHA") will implement the relief if the OHA determines that refiners as a class were injured by violations of the Emergency Petroleum Allocation Act ("EPAA").

After oral argument before the Court, on the parties' Motions, DOE notified the Court that the OHA announced on June 21, 1985, that an appropriate portion of crude oil overcharge funds will be used to fund outstanding, finally adjudicated "receive orders" such as that held by Southland and that an appropriate procedure would be implemented to provide the relief. However, because of litigation concerning the termination of the entitlements program, *e.g., Texaco, Inc. v. DOE,* TECA Nos. 3–44 through 3–49, payment of the "receive orders" will be placed in an interest-bearing escrow account pending the outcome of *Texaco.*

■ DOE asserts that the OHA decision renders the instant litigation moot. Southland argues that the OHA decision of June 21, 1985, places yet another condition on the May 8, 1984, unconditional FERC order. Southland notes that the *Texaco* litigation is now in the briefing stage before the Temporary Emergency Appeals Court and that the United States Supreme Court may yet have to ultimately determine whether the entitlements lists will be published. Then, Southland comments that other pending litigation will have to decide the accuracy of the entitlements lists. Since the June 21, 1985, OHA ruling does not satisfy the Southland claim, this Court concludes that the June 21, 1985, OHA order does not moot the Southland claim. Accordingly, this Court will consider the merits of the pending Motions before it.

In November 1973, Congress enacted the EPAA which created comprehensive allocation and pricing regulations for crude oil and petroleum products. 15 U.S.C. § 753(a). Pursuant to the Act, the Federal Energy Administration ("FEA"), the predecessor to DOE, established a multi-tiered system of crude oil price controls. 10 C.F.R. Part 212, Sub-Part D (1984). Under the system, certain domestic crude oil was subject to "old" or "lower tier" ceiling prices while other domestic crude oil was subject to higher "new" or "upper tier" ceiling prices. Other categories of crude oil were exempt from price control.

The system placed those refiners forced to buy upper-tier or uncontrolled crude oil at a competitive disadvantage. To address this problem, FEA promulgated the Entitlements Program. 10 C.F.R. § 211.67 (1984); 39 Fed.Reg. 42246 (Dec. 4, 1974). The regulations roughly equalized the cost per barrel of crude oil among refiners through cash transfers between refiners rather than the physical transfer of oil. To achieve this result, each month refiners with greater than average access to price-controlled domestic crude oil bought "entitlements" from refiners with less than average access to low cost crude. 10 C.F.R. §§ 211.67(a)(1), (b)(1) and (c) (1984). The "entitlements" purchased or sold each month by refiners were published in a monthly entitlements notice to the refining industry. 10 C.F.R. § 211.67(i)(1) (1984). If the obligation to purchase entitlements would impair the refiner's "historically established financial position," then the refiner was entitled to "an adjustment" or "exception" to "prevent special hardship, inequity or unfair distribution of burdens . . . ." 42 U.S.C. § 7194(a).

The exceptions process functioned by OHA grants of prospective relief for six month periods based upon the financial projections of the refiner, to be followed by a year-end review based on actual figures to determine whether the refiner had received inadequate or excessive exception relief. To implement the year-end findings, OHA issued orders permitting the refiner to sell or requiring it to buy additional entitlements. *Beacon Oil Company,* 3 FEA ¶ 83,209 (June 8, 1976). These buy or sell obligations were then reflected on subsequent entitlement notices.

In October 1983, the Presiding Officer of FERC ruled that Southland had unlawfully been required to pay $7,597,567.00 to the Entitlements Program for the years 1977 and 1978. FERC sought to restore this

sum to Southland by relieving it of a purchase obligation imposed by an April 1, 1981, OHA order and by providing that: ... the Economic Regulatory Administration of the Department of Energy shall in the next Entitlements Notice increase the value of entitlements [Southland] would otherwise be permitted to sell (or decrease the value of the entitlements it would otherwise be entitled to purchase) by $5,956,499.00 to the nearest entitlement. In the event no further Entitlements Notice is issued, DOE will take other appropriate action to implement this action.

On May 8, 1984, FERC issued an Order adopting the October 1983 Order of the Presiding Officer. The May 8, 1984 FERC Order is the order which Southland seeks to implement.

Prior to issuance of the FERC Order, President Reagan, on January 30, 1981, issued Executive Order 12287, exempting all crude oil and petroleum products from the price and allocation regulations (the "Decontrol Order"). The Decontrol Order authorized the Secretary of Energy "to take such actions as he deems necessary to implement [the] Order, including the promulgation of Entitlements Notices for periods prior to [the] Order and the establishment of a mechanism for entitlements adjustments for periods prior to [the] Order."

Shortly after the Decontrol Order, DOE published official assurances that it "will publish" a December 1980 Entitlements Notice in February 1981 and that it "will also publish" a Notice in March reflecting transactions in the first 27 days of January, 1981. Ruling 1981–1, 46 Fed.Reg. 12946 (Feb. 19, 1981) (Answer # 2). The December notice was issued February 20, 1981. 46 Fed.Reg. 14157 (Feb. 26, 1981).

Between March 1981 and December 1981, a series of Federal Court injunctions prevented the issuance of the January 1981 Entitlements Notice. *See, e.g., Mobil Oil Corporation v. DOE,* 520 F.Supp. 420 (N.D.N.Y.), *rev'd,* 659 F.2d 150 (Temp. Emer.Ct.App.), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); *Indiana Farm Bureau Cooperative Association v. DOE,* [1981–84 Transfer Binder] Energy Mgmt. (CCH) ¶ 26,315 (S.D.Ind. 1981); *Winston Refining Company v. DOE,* [1981–84 Transfer Binder] Energy Mgmt. (CCH) ¶ 26,311 (M.D.N.C.1981). During this period, however, the Economic Regulatory Administration ("ERA") of the DOE conducted a rule-making proceeding "to provide for the orderly termination of the Crude Oil Entitlements Program." *See* 46 Fed.Reg. 15112 (March 3, 1981). ERA adopted regulations which contemplated issuance of a final "Clean-Up Notice" implementing adjustments relating to the period prior to decontrol, specifically including entitlements exceptions order. 10 C.F.R. § 211.64 (1984); 46 Fed.Reg. 36092 (July 13, 1981).

In 1981, when DOE established the Clean-Up Notice to liquidate entitlements rights and obligations, it noted its duty to implement all OHA exception decisions even after decontrol:

It is the DOE's position that OHA may award entitlements exception relief after January 28, 1981, if the relief awarded relates to periods prior to decontrol. If OHA decides that a firm should have had exception relief at the time of decontrol, it is DOE's position that the intervention of decontrol did not negate the prior claim to exception relief and that DOE must give effect to such relief.

46 Fed.Reg. at 36093. With regard to claims finally adjudicated after issuance of the Clean-Up Notice, DOE stated:

We have considered and rejected the notion of ignoring post-clean-up claims and obligations adjudicated by FERC or the courts. First, courts have made clear that agencies cannot extinguish rights *sub judice,* so we cannot purport to cut off claims and obligations merely because outstanding cases are not finally determined by the date of the clean-up list.

46 Fed.Reg. at 36096.

Despite these affirmations by the DOE of its obligations with regard to exception relief, in November 1983, the DOE an-

nounced its tentative decision to issue no further entitlements notices and questioned whether outstanding OHA, FERC and court decisions should be implemented notwithstanding non-publication of the January entitlement adjustment notices. 48 Fed.Reg. at 50482. Thereafter, on June 28, 1984, DOE announced its final decision to issue neither the January 1981 nor the Clean-Up Entitlements Notices. 49 Fed. Reg. 27410 (July 3, 1984). Simultaneously, the DOE announced a "tentative decision" to effectuate orders which provide for receipt of money by firms only "if an appropriate mechanism can be devised which does not unduly disrupt the market." 49 Fed.Reg. at 27148. DOE also announced its tentative decision not to enforce OHA and FERC orders requiring the repayment of excessive exception relief received by certain firms during the course of the entitlements program. *Id.* On January 9, 1985, DOE announced its "final decision" on exception orders, making final its "tentative decision" not to enforce such orders. 50 Fed.Reg. 1919 (January 14, 1985). Thus, refiners who, during the course of the Entitlements Program, were granted exception relief in excess of that warranted under the regulatory standards were excused from their obligation to repay the relief erroneously granted. Likewise, DOE also concluded that it had no legal obligation to give effect to exception orders providing for the payment of exception relief wrongfully denied during the operation of the program. 50 Fed.Reg. at 1923. DOE noted, however, that OHA was conducting proceedings to determine proper disposition of refund monies collected in cases involving violations of the crude oil pricing regulations. 50 Fed.Reg. at 1921. According to DOE, unpaid exception orders would be paid if OHA determines refiners as a class were injured by violations or alleged violations of the EPAA regulations. *Id.* As indicated above, the OHA determined on June 21, 1985, that refiners as a class had been injured and were entitled to an appropriate portion of the Crude Oil Overcharge Fund.

■ DOE opposes the Motion of Southland for Partial Summary Judgment and moves to dismiss the complaint on the basis that the Decontrol Order rendered the May 8, 1984, FERC order discretionary since the FERC order presupposed the continued operation of the Entitlements Program and the publication of the Entitlements lists. DOE argues that the FERC order and the Decontrol Order left it to the discretion of DOE to determine what relief is appropriate in the event an entitlement list was not published. DOE also states that the implementation of the FERC order is conditional since it depends on whether OHA determines that refiners as a class were injured by violations of the EPAA. Now DOE contends that payment or receive orders must await the outcome in *Texaco*.

This Court finds that Southland is entitled to a declaratory judgment that the DOE has an unconditional and non-discretionary obligation to implement the May 8, 1984, FERC order, requiring DOE to restore to .Southland $5,956,499.00. The Court further finds that the Motion of DOE to Dismiss or for Summary Judgment is denied as being frivolous. *See Texaco, Inc. v. DOE*, Civil Action No. 84–391–JLL (D.Del. March 20, 1985); *USA Petroleum v. DOE*, Civil Action No. 84–1017 (D.C.D.C. February 15, 1985); *Navaho Refining Company v. DOE*, [1981–84 Transfer Binder] Energy Mgmt. (CCH) ¶ 26,484 (D.N.M. 1984), *Appeal dismissed*, [1981–84 Transfer Binder] Energy Mgmt. (CCH) ¶ 26,514 (Temp.Emer.Ct.App.1984). The decisions in *USA Petroleum* and *Navaho Refining Company* clearly mandate the implementation of the Southland exception order. DOE cannot now refuse to recognize the Southland exception order based upon its wholly unreasonable and insupportable interpretations of the FERC order and the Decontrol Order. Indeed, by virtue of the OHA order of June 21, 1985, DOE obviously recognizes that the Southland-type claims are entitled to relief despite its earlier contrary contentions.

In *Texaco, Inc. v. DOE*, Texaco sued to compel DOE to publish the entitlements list under the Entitlements Program, which

DOE claimed it was relieved from doing by virtue of the Decontrol Order. The court held that the power of the DOE to amend the entitlements regulations ended after the Decontrol Order, and that the DOE could not now recoup that power by refusing to comply with the regulations. Further, the court stated that the regulations impose an obligation on DOE to issue entitlements for crude oil transactions occurring prior to the Decontrol Order.

■ Based upon *Texaco, Inc. v. DOE*, this Court finds that DOE cannot attach other conditions to the relief Southland seeks since the power of DOE to amend the Entitlements regulations expired after decontrol. Consequently, whether the OHA determines that refiners as a class have been injured by violations of the EPAA is irrelevant to implementation of the relief ordered Southland by FERC. However, at this juncture, the OHA has determined that refiners as a class were injured and has established a fund to reimburse Southland-type claims. The method of payment will be determined in "Stage II" of these proceedings.

In *Navaho Refining Company v. DOE, supra*, Navaho, like Southland, sought summary judgment declaring its right to restitution of over four million dollars in excessive payments Navaho was required to make to the Entitlements Program. DOE argued, as they do here, that the implementation of the FERC order was conditioned on issuance of a January 1981 Entitlements List. DOE also argued that the FERC order was not final. The court determined that FERC found that Navaho paid excessive sums into the Entitlements Program. Consequently, the court found that there was nothing more for DOE to adjudicate. "All that is required is implementation of the relief that has already been ordered." Thus, the court granted Navaho summary judgment.

In *USA Petroleum v. DOE, supra*, the same issue was before the court. The FERC order contained identical language to the May 8, 1984, FERC order at issue here—"in the event no further Entitlement Notice is issued, DOE will take other appropriate action to implement this order." The court ruled that the FERC order clearly required some relief, even if it did not specify the relief, and that DOE has a duty to provide relief through appropriate action. The court reasoned that the Decontrol Order ended price control of oil; it did not change or cancel the already adjudicated exceptions given to participants in the program. Consequently, the court granted the motion of USA for partial summary judgment.

These decisions, although unpublished and subject to appeal, convince this Court of the error and of the totally frivolous nature of the DOE position. Consequently, this Court grants the Motion of Southland for Partial Summary Judgment and denies the Motion of DOE to Dismiss or for Summary Judgment. Furthermore, the Court orders DOE to report to this Court within fifteen (15) days the method by which it intends to implement the May 8, 1984, FERC order, whether through means of the crude oil overcharge fund or otherwise.

2. *Motion of DOE to Stay.*

■ DOE moves to stay proceedings in this Court pending final resolution of *Texaco, Inc. v. DOE, supra*, which it has appealed and which it claims will moot the Southland claim. As explained by Southland in opposition to the Motion to Stay, DOE advanced the same argument in *USA Petroleum v. DOE, supra*, and lost. As stated by the court in *USA Petroleum*, the "DOE in this connection ... is a dishonest litigant" and their track record to date has been one of "delay—delay—delay." Moreover, this Court is appalled at the manner in which the DOE uses the *Texaco* appeal to its advantage, arguing in this case that *Texaco* will be affirmed and will moot the Southland claims and in *Mobil Oil Corporation v. DOE*, Civil Action No. 81–CV–340 (N.D. N.Y.) that *Texaco* will be reversed and moot the claims of Mobil Oil Corporation that the data upon which the DOE will base any entitlements list is erroneous. It seems that the DOE is playing fast and

loose with federal courts across the United States. It ends here. The Motion to Stay is denied and the DOE will within fifteen (15) days of the entry of this Order present to this Court its plans for implementing the FERC order.