VGS CORPORATION d/b/a Southland Oil Company and Globe Asphalt Co., Inc., Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF ENERGY and John S. Herrington, Secretary of Energy, Defendants-Appellants.

No. 5–119.

Temporary Emergency Court of Appeals.

Argued June 4, 1986.

Decided Nov. 28, 1986.

Judgment Entered Dec. 9, 1986.

Dennis A. Henigan, Foley & Lardner, Washington, D.C., with whom Edwin Jason Dryer and Jack L. Lahr of the same firm, Alex A. Alston, Jr., Thomas, Price, Alston, Jones & Davis, Jackson, Miss., were on brief for plaintiffs-appellees.

Samuel Soopper, Atty., Office of Gen. Counsel, U.S. Dept. of Energy, Washington, D.C., with whom Catherine C. Cook and Dennis M. Moore, Attys., were on brief for defendants-appellants.

Jerry E. Rothrock and Harry R. Silver, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for amicus curiae Beacon Oil Co.

Sheldon Oliensis, Myron Kirschbaum, Robert B. Bernstein, Kaye, Scholer, Fierman, Hays & Handler, New York City, A.J. Losee, Losee & Carson, Artesia, N.M., Henry L. Stern, Holly Corp. Dallas, Tex., and Thomas W. Houghton, Mayor, Day & Caldwell, Houston, Tex., of counsel, for amicus curiae Navajo Refining Co.

Before METZNER, DUNIWAY * and WEIGEL, Judges.

METZNER, Judge.

The Department of Energy (DOE) appeals from that part of a mandamus order entered in the United States District Court for the Southern District of Mississippi which directed DOE to pay prejudgment interest from May 8, 1984, to the appellee VGS Corporation, d/b/a Southland Oil Company (Southland). DOE complied with the order for the period October 2, 1985 to December 20, 1985, when it paid Southland the principal amount due. The subject of this appeal is the liability of DOE to pay prejudgment interest for the period from May 8, 1984 to October 2, 1985.

The Department of Energy Organization Act authorizes exception relief from the Petroleum Price and Allocation Regula-

---

* Judge Duniway died without having participated in the decision in this matter.

tions, including the entitlements program,[1] for those parties adversely affected by the operation of these regulations. 42 U.S.C. § 7194. Exception relief was awarded on a case by case basis to alleviate serious hardship or gross inequity attributable to the impact of the DOE regulations on a refinery. 10 C.F.R. part 205, subpart D. This relief, awarded prospectively by the Office of Hearings and Appeals (OHA), excused refiners from certain future entitlements obligations for a specified period. Since this relief was based on a projection of a firm's future performance, it was subject to a subsequent review of actual data at the end of the year.

After OHA conducted its review at the end of a refiner's fiscal year, it would issue a final order regarding the relief that the firm was entitled to for the year. If the review determined that the firm was entitled to more exception relief than it had received during the fiscal year an order was issued directing that the refinery be allowed to sell an appropriate number of entitlements on the next entitlements notice. Conversely, if less exception relief should have been granted during the year, the firm was required to purchase additional entitlements on the next entitlements notice.

The details of the entitlements program have been thoroughly delineated in earlier opinions of this court and need not now be repeated. *See, Husky Oil Co. v. Department of Energy,* 582 F.2d 644 (Temp.Emer. Ct.App.1978); *Cities Service Co. v. Federal Energy Administration,* 529 F.2d 1016 (Temp.Emer.Ct.App.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976); *Pasco, Inc. v. Federal Energy Administration,* 525 F.2d 1391 (Temp.Emer. Ct.App.1975).

On February 23, 1981, OHA had issued two orders which changed the method of computing Southland's exception relief for the years 1977 and 1978. As a result Southland was found to have received excessive prospective exception relief and was required to purchase an additional $13.4 million in entitlements on the next monthly notice. This obligation was included in the December 1980 entitlements notice which was issued in February 1981, after President Reagan had ended the price control program. Southland made the additional entitlements purchases. On April 1, 1981, OHA modified the original orders to assess an additional purchase obligation of $1,638,068. This obligation was to be reflected on the next entitlements notice which would have been for January 1981, the last month before decontrol. Although this notice would customarily have been issued by the end of March, it had not been issued by the date of the OHA order.

Southland brought suit in federal court seeking declaratory and injunctive relief from these three orders. The district court issued a preliminary injunction in favor of Southland on May 13, 1981. This injunction required that the January 1981 entitlements notice, which had not as yet been issued, should include entitlements sales on Southland's behalf equal to the sum Southland had paid for entitlements under the OHA orders of February 23, 1981. The injunction further required that when Southland received this money, it should be placed in an interest-bearing escrow account along with the $1,638,068 that Southland had not yet paid under the April 1, 1981 order. The fund was to be used to repay Southland to the extent it prevailed before the Federal Energy Regulatory Commission (FERC) where Southland was administratively challenging the contested OHA orders.

In July 1981 DOE published a regulation establishing a clean-up entitlements notice. In August it then sought to dissolve the preliminary injunction because of the existence of the July regulation. It stated to the court:

"Southland alleged here that it would suffer injury because there was no mechanism in place that would assure that Southland would receive its money when

---

**1.** *Cities Service Co. v. Federal Energy Administration,* 529 F.2d 1016 (TECA 1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976).

and if it prevailed in its application for exception relief. That mechanism is now firmly in place...."

The court denied the motion to lift the injunction.

Nothing further happened in this matter until July 6, 1982, when DOE announced that it was seeking public comments as to whether it should publish the January entitlements notice. 47 Fed. Reg. 30,279 (July 13, 1982). If these notices were not published, the district court's preliminary injunction could not be implemented.

On October 18, 1983, a FERC presiding officer issued a proposed order finding that the disputed OHA orders of February 23, 1981 and April 1, 1981 improperly calculated Southland's exception relief. *Southland Oil Co./VGS Corp.*, 25 FERC ¶ 62,-118. The proposed order sought to make Southland whole by relieving it of the remaining purchase obligation of $1,638,068 under the April 1 order, and by providing that an additional $5,956,038 be transferred to Southland in the form of entitlements payments on the next entitlements notice. The January 1981 notice had still not been issued. On May 8, 1984, FERC adopted this proposed order as a final order. *Southland Oil Co./VGS Corp.*, 27 FERC ¶ 61,205.

On June 28, 1984, DOE decided not to issue further entitlements notices. At that time, however, it stated that it would initiate a public proceeding to consider how to implement outstanding exception relief. On January 9, 1985, DOE decided that it would use crude oil overcharge funds held by DOE in the *Stripper Well*[2] litigation to pay holders of exception relief, but only if OHA found that refiners were injured as a class by violations of energy price regulations. OHA so found on June 21, 1985. 50 Fed. Reg. 27,400, 27,401 (July 2, 1985). DOE also stated that payments would be withheld because of the continuing litigation in *Texaco v. Department of Energy*, 795 F.2d 1021 (TECA 1986), and that "any payment pursuant to this order will be placed in an interest-bearing escrow account pending

the outcome of that litigation." 50 Fed.Reg. at 27403, n. 1.

On July 12, 1985, the scene moves back to the district court which at that time issued a declaratory judgment that DOE had an "unconditional and non-discretionary obligation" to pay Southland, 613 F.Supp. 243. The court found DOE's position regarding method and timing of payment to be "totally frivolous," and its record to be one of "delay-delay-delay."

DOE honored this order on October 2, 1985, to the extent of segregating funds in the *Stripper Well* account necessary to pay exception orders. It established separate interest-bearing accounts in the United States Treasury for each claimant to be released upon the completion of the *Texaco* litigation. *Amber Refining Inc., et al.*, 50 Fed. Reg. 41,572 (October 11, 1985). DOE announced that interest on the exception orders would start to run from October 2, 1985.

On December 4, 1985, the district court ordered full restitution to Southland within 20 days. In addition, DOE was directed to pay interest on the amount due from May 8, 1984, the date of the FERC order. The basis for this direction was twofold: (1) Southland's recovery was liquidated at that time, and (2) DOE's objection to honoring the FERC order was frivolous. An order directing payment of exception relief had been entered in *Navajo Refining Co. v. Department of Energy* in September 1985, and a request for a stay in that case was argued before this court on December 10, 1985. The stay was denied at the conclusion of oral argument. Judge Daugherty stated at the time that "the public interest is fundamentally against the delay imposed by D.O.E. in this case, and ... against the principles of good government and proper treatment of its citizens, including its corporate citizens...." *Navajo Refining Co. v. Department of Energy*, TECA No. 10-62. Transcript of Proceedings, December 10, 1985, at 45.

On December 20, 1985, DOE paid Southland the exception relief awarded by

---

**2.** *In re The Department of Energy Stripper Well*     *Exemption Litigation*, M.D.L. No. 378 (Theis, J.).

FERC, but included interest only from October 2, 1985. It appealed that part of the court's order requiring it to pay interest from May 8, 1984, the date of the FERC order, to October 2, 1985.

### Discussion

This case involves two separate and distinct issues. First, DOE contends that under the doctrine of sovereign immunity it is entirely immune from any claim of prejudgment interest. Second, it contends that even if it is not immune, the district court abused its discretion in awarding interest in this case. Since the doctrine of sovereign immunity precludes an award of prejudgment interest against DOE, it is unnecessary to reach the question as to whether the district court abused its discretion which would call for a reversal of the judgment.

At the outset I want to state that symypathy and the equities all favor the plaintiff in this case. The actions by DOE over the last five years in this and other matters have simply been beyond belief. This court and several district courts have made this point clear. However, these considerations are not helpful to the plaintiff in this case.

The Supreme Court has frequently reaffirmed over the past several decades the sovereign immunity rule that in the absence of a *specific* provision in a contract or statute, or express *consent* by Congress, interest does not run on a claim against the United States. As will become evident in the ensuing discussion, "claim against the United States" has been broadly construed and has not been limited to the public fisc.

The stringency of the rule is clearly apparent in the Court's most recent discussion of the rule in *Library of Congress v. Shaw*, —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). In that case the Court was concerned with a judgment awarding an employee back pay rights with interest against the government under the civil rights acts. Title VII provides that the United States would be liable "the same as a private person." The wording was held not to have been express enough to award

interest against the government. The Court took pains to emphasize that "policy, no matter how compelling, is insufficient, standing alone, to waive this immunity." *Id.* 106 S.Ct. at 2965.

In *United States v. Louisiana*, 446 U.S. 253, 100 S.Ct. 1618, 64 L.Ed.2d 196 (1980), the parties had agreed that payments made to the United States on leases of offshore oil land were to be impounded in a separate fund in the United States Treasury pending determination of the ownership of the land. Although the moneys were commingled with the general funds of the Treasury, a separate account had been established on the books of the Treasury. "This was much more than a recordkeeping device. The receipts were never treated as governmental revenues." *Id.* at 264, 100 S.Ct. at 1625. The Court held, under the long-expressed doctrine noted above, that the United States has fulfilled its obligation under the agreement, and "that there is no liability on the part of the United States for interest or for the use of the funds; and that the United States has no further obligation for payment beyond those it has performed." *Id.* at 266, 100 S.Ct. at 1626.

In *United States v. N. Y. Rayon Importing Co., Inc. (# 2)*, 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577 (1947), custom duties had been paid erroneously by two corporations. Protests were filed and the Customs Court sustained the protests. The amount of refund was ascertained by the court and checks were issued to the corporations. Because the corporations had been dissolved in the interim, the checks were transmitted to the General Accounting Office where they were deposited in a trust fund in the Treasury. While the funds were commingled with other moneys, their existence in a trust fund was established by bookkeeping entries. The court below had awarded interest for the period after the issuance of the checks. Although the Court was construing a different provision than the one at issue in this case, it pointed out that the section merely "codifies the traditional rule regarding the immunity of the United States from liability for interest

on unpaid accounts or claims." *Id.* at 658, 67 S.Ct. at 603. The Court said at 663, 67 S.Ct. at 606:

"Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy. We reiterate that only express language in a statute or contract can justify the imposition of such interest."

It is significant that the Court has never considered the nature of the account to be in any way important. It makes no difference whether the money has been set up as a "separate trust fund" or a "separate account" or, as in this case as a separate interest-bearing account in the United States Treasury. Nor has the existence of strong equities, as in the *N.Y. Rayon* case, had an impact on the Court's views. The cases never articulate the rationale underlying the rule, but rather simply apply it in a mechanical fashion. The Treasury has the money and the claim is against the United States to recover that money. This is sufficient to bring sovereign immunity into play.

It is argued that sovereign immunity does not apply in this case because the government has never claimed a right to the money. While this might distinguish *Louisiana, supra,* it certainly does not remove the obstacle presented by the *N.Y. Rayon* case. In that case, while it is true that the government at one point claimed it had a right to the money, it was finally determined that the money belonged to the corporations. After the checks were issued, the government had no claim to these funds. The government was merely holding the money until the rightful owner appeared. Nevertheless, the Supreme Court denied the availability of interest to the claimants under the doctrine of sovereign immunity.

Relief in this action was predicated on Section 504(a) of the Department of Energy Organization Act, 42 U.S.C. 7194(a). There is no provision for the payment of interest in that Act. While Section 209 of the Economic Stabilization Act, 12 U.S.C. § 1904 note, has been interpreted to permit an award of interest against a private party, *United States v. Exxon Corp.,* 773 F.2d 1240, 1278–79 (Temp. Emer. Ct. App.1985), such interest may not be awarded against the government. At any rate, provision for the payment of interest must be express in the statute under consideration. In *Library of Congress v. Shaw, supra,* 106 S.Ct. at 2961, the Court said: "In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Similar language is found in the *N.Y. Rayon* case, *supra* 329 U.S. at 659, 67 S.Ct. at 604:

"[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed."

The judgment entered by the court below flowed from its finding on July 12, 1985, that DOE had an "unconditional and nondiscretionary obligation" to pay to the plaintiff. This obligation had nothing to do with the overcharge fund. The importance of the fund is simply that DOE chose to pay its liability out of that fund if *Texaco, supra,* was reversed, which it was. The choice by DOE of how it would pay the judgment has no bearing on whether sovereign immunity applies to the judgment itself. If the overcharge fund did not exist, DOE would have had to pay the judgment some other way.

The part of the order appealed from is reversed, and the provision for payment of interest from May 8, 1984 to October 2, 1985 is vacated.