**CONSUMERS POWER COMPANY,**
**Plaintiff–Appellant/Appellee,**

v.

**UNITED STATES DEPARTMENT OF ENERGY,**
**Defendant–Appellee/Appellant.**

**Nos. 6–36, 6–37 and 6–38.**

Temporary Emergency Court of Appeals.

Argued Oct. 13, 1988.

Decided Jan. 2, 1990.

Judgment Entered Jan. 4, 1990.

---

Stephen C. Skubel, Office of General Counsel, U.S. Dept. of Energy, Washington, D.C., with whom Marc Johnston and Charles L. Cope II of the same office were on the brief for defendant-appellee/appellant U.S. Dept. of Energy.

William H. Bode, William H. Bode and Associates, Washington, D.C., with whom John M. Mason of the same firm, and O.K. Peterson, Consumers Power Co., Jackson, Mich. were on the brief for plaintiff-appellant/appellee Consumers Power Co.

Don L. Keskey, Asst. Atty. Gen. for the State of Mich., Lansing, Mich., with whom Frank L. Kelley, Atty. Gen. for the State of Mich., Louis J. Caruso, Sol. Gen. for the State of Mich., and Ronald D. Eastman, Sp. Asst. Atty. Gen., Lynda S. Mounts, Joel Kauffman, Cadwalader, Wickersham and Taft, Washington, D.C. were on the brief for intervenor-appellee State of Mich.

Before HOFFMAN, BECKER and DAUGHERTY, Judges.

## PER CURIAM:

This consolidated appeal concerns several issues related to an action brought by Consumers Power Company (Consumers) through which Consumers sought to participate in the Department of Energy's (the Department) Entitlement Program.

### I.

The appeals in all of the cases presently before this Court evolved out of the decision of the United States District Court for the Eastern District of Michigan requiring the Department to include Consumers in the Department's Entitlements Program (the Program) for the period it was a "refiner" as defined in the Emergency Petroleum Allocation Act of 1973, Pub.L. No. 93–159, 87 Stat. 627 (1973), *codified at* 15 U.S.C. sections 751 *et seq.*, 753(b)(1)(F) (1976). *See Consumers Power Co. v. Department of Energy*, 742 F.2d 1468–69 (TECA 1984); *Thriftway Co. v. Department of Energy*, 867 F.2d 1577, 1578–79, n. 1–2 (TECA 1989) (description of the mechanics of the Program). The district court remanded the case on September 8, 1982, to the Department for determination of the periods for which Consumers was a refiner.

On remand, the Department raised new objections to Consumers's participation in the Program. Consumers returned to the district court seeking a mandamus order compelling the Department to provide benefits under the Program. The district court issued the mandamus, the Department appealed, and the Temporary Emergency Court of Appeals (TECA) affirmed the district court's order. *See Consumers Power Co.*, 742 F.2d at 1470.

The Department continued to exclude Consumers from the Program, and Consumers returned to the district court seeking a second order of mandamus. The district court deferred ruling on Consumers's motion until administrative proceedings concerning Consumer's participation in the Program concluded. The district court did, however, implement a schedule of status reports to keep track of the progress in the proceedings.

The Department held administrative hearings, during which it was determined that Consumers was entitled to an amount in excess of $18,000,000.00. The Department, however, withheld payment of these funds pending the outcome ·of litigation concerning the legality of the Department's decision not to issue final entitlement notices in *Texaco, Inc. v. Department of Energy*, 795 F.2d 1021 (TECA), *cert. denied*, 478 U.S. 1030, 107 S.Ct. 10, 92 L.Ed.2d 766 (1986).

Consumers filed a motion to require the Department to identify, sequester, and provide for accrual of interest on funds sufficient to satisfy the benefits due from the Department, estimated to be approximately $22.3 million. On August 14, 1985, the district court ordered the Department to report the exact amount due and place these funds in an interest-bearing escrow account which was sufficient to cover the entitlement benefits and interest accruing from September 8, 1982.

The Department filed a motion to amend the judgment, stating that the entitlement benefits issue was not properly before the district court and that the order was in error as it required the government to pay interest.[1] Consumers filed a motion while

---

1. On September 13, 1986, while its motion to amend was pending, the Department filed a

the Department's motion to amend was pending seeking to compel the Department to disburse the entitlement benefits and seeking prejudgment interest for the period 1974 to September 8, 1982. The district court, on January 31, 1986, rejected the Department's arguments and directed the Department to immediately disburse the funds due to Consumers. In a separate order, the district court also placed the parties on a briefing schedule with regard to Consumers's entitlement to pre-judgment and post-judgment interest.

On February 5, 1986, the district court vacated its January 31, 1986 order in part to eliminate the inconsistency between the August 14, 1985 order, which stated that Consumers was entitled to post-judgment interest, and the January 31, 1986 order, which suggested that the post-judgment interest issue remained unsolved. The Department was directed to file a memorandum only on the issue of pre-judgment interest, and to determine and sequester the post-judgment interest in an interest-bearing escrow account.

After the district court denied the Department's motion to amend, the Department moved in this Court for a stay of proceedings until the final decision was issued in *VGS Corp. d/b/a Southland Oil, et al. v. United States Dep't. of Energy,*

808 F.2d 842 (TECA 1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 525 (1987), which involved awards of pre-judgment interest in entitlement cases. We granted the stay.

When the decision in *Southland* was released and the stay expired, the Department moved in this Court to reverse the post-judgment interest award on the basis of the *Southland Oil* decision. Consumers moved to dismiss the appeal under Fed.R. App.P. 4(a), arguing that the appeal was a nullity as it was filed while the motion to amend was pending yet not renewed when the motion was denied.[2]

The case returned to the district court, which issued a disbursement order, dated June 19, 1987, filed on June 22, 1987. The order directed the Department to release the monies held in escrow for Consumers. The Department filed a notice of appeal from the disbursement order on July 20, 1987.

Consumers filed an application for attorneys' fees and costs on July 22, 1987, seeking $243,028.75 in fees and $24,448.09 in expenses and costs.[3] A federal magistrate granted Consumers's application in part and denied it in part, granting fees after February 19, 1985 (a total of $88,021.25).[4] Both sides appealed the order, and the district court, while adopting the conclusions

---

notice of appeal with this Court from the district court's award of post-judgment interest. The Department also requested this Court to stay the appeal pending the district court's decision on the motion to amend judgment. We granted the stay.

2. The Department asked this Court to dismiss the appeal on June 12, 1987 on the ground that the appeal was based on a non-final order and thus premature. We granted this request.

3. Consumers divided its request into four stages:
   *Phase 1.* This period covered February 1, 1981 to September 8, 1982, which included the initial filing of the complaint and all work leading to the remand of this case to the Department for consideration of when Consumers qualified as a "refiner." Fees: $60,346.25.
   *Phase 2.* This covered the period September 9, 1982 through March 2, 1983, which involved administrative proceedings before the Department. Fees: $7,440.00.
   *Phase 3.* This covered March 3, 1983 through August 31, 1984, which is the period during

which Consumers sought mandamus relief. Fees: $71,852.50.
   *Phase 4.* This covered September 1, 1984 through May 31, 1987, which included meeting challenges to the interest issue. Fees: $103,-390.00.

4. The Magistrate's Opinion and Order stated:
   During the course of this litigation, the Department of Energy (DOE) took several actions which had the effect of delaying the inclusion of Consumers Powers in an entitlement program. Certain of these delays were necessary to allow DOE to pursue its right to appeal. Other delays, I conclude, were caused because DOE raised unreasonable and unsupportable arguments. These attorney fees which are attributable to the company's defending against DOE's arguments which were unreasonable and unsupportable must be paid by the DOE in the interest of justice. *Kasprowicz v. Capital Credit Corp.,* 524 F.Supp. 105 (E.D.Mich.1981); *Grinnel Bros., Inc. v. Touche Ross & Co.,* 655 F.2d 725, 726 (6th Cir.1981).

of the magistrate,[5] expanded the time for which fees would be awarded from September 1, 1984 up to and including February 18, 1985. This extension granted Consumers an additional $15,369.00 in attorneys' fees. The Department filed a notice of appeal from the district court's order on January 6, 1988, and Consumers filed an appeal on January 11, 1988.

## II.

This Court consolidated the above appeals for consideration.[6] In TECA No. 6–36, the Department appeals from the disbursement order of July 20, 1987, alleging that the district court erred in awarding post-judgment interest to Consumers. In TECA No. 6–37, the Department appeals the award of attorneys' fees to Consumers. In TECA No. 6–38, Consumers appeals the denial of attorneys' fees for other parts of the litigation. Each of the appeals will be addressed below.

### A. *TECA No. 6–36: The Interest Award*

■ As a preliminary matter, we face the issue of whether the Department has properly appealed from a final judgment in TECA No. 6–36. If the sequestration order is considered a final judgment in this case, then the Department's appeal would be untimely as it was filed well beyond the 30–day limit following the January 31, 1986 district court denial of the Department's rule 59(e) motion to amend the order. *See supra* note 2. We find that the sequestration order was not a final judgment in this matter, but rather, the order entered on June 22, 1987 is the final judgment in this case.

A "final judgment" is generally one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Budinich v. Becton*

---

5. The district court states that it "believe[d] that the 6th Circuit's standard [in the interest of justice] is an appropriate one and, clearly, a standard that must be given compliance by this Court." R. at 040.

6. By order of this Court dated March 24, 1988, TECA Nos. 6–36 and 6–37 were consolidated for

*Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988); *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945). The Supreme Court in *Budinich* stated that a question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or reverse decisions embodied in the order. *Budinich*, 486 U.S. at 199–203, 108 S.Ct. at 1720–22; *Brown Shoe Co. v. United States*, 370 U.S. 294, 308–09, 82 S.Ct. 1502, 1514–15, 8 L.Ed.2d 510 (1962).

The district court's order of January 31, 1986 makes clear that issues remained outstanding concerning the award of pre-judgment and post-judgment interest. The February 5, 1986 order eliminated the confusion over the post-judgment issue, but the last paragraph of the court's order left open the issue of pre-judgment interest. While the fact that ministerial tasks such as computation and disbursement of funds remain outstanding does not deprive an order of finality for the purposes of appeal, *Hattersley v. Bollt*, 512 F.2d 209, 214 (3d Cir.1975), we find that the district court's orders during January and February 1986 indicate that substantial issues remained open concerning the obligations of the parties. While computation of interest in most cases may not amount to more than a ministerial task, in this case, whether Consumers should receive an interest award was not at all clear and thus rose above the ministerial level. For these reasons, we find that a final order was not entered in this case until the district court issued the distribution order on June 22, 1987. The Department appeal is thus properly before this Court.

We now turn to the issue of whether the district court erred in awarding post-judgment interest to Consumers. Consumers's

review by this panel of TECA. The appeal in TECA No. 6–38 was originally taken to the Sixth Circuit, which transferred the appeal to the TECA by order dated May 27, 1988. The appeal in TECA No. 6–38 was consolidated with the existing appeals in this Court.

claims for interest fall into three classifications:

(1) Interest from the date that Consumers first became entitled to benefits until the judgment entered on September 8, 1982;

(2) Interest from the date of the judgment entered on September 8, 1982, to the establishment of the escrow account; and

(3) Interest from the date the escrow account was established by court order on August 14, 1985.

■ The interest for the first period was the subject of a stipulated order signed by both parties and the district judge on May 29, 1987. The order stated that the parties agreed that the final decision in *VGS Corp. d/b/a Southland Oil, et al. v. United States Dep't. of Energy*, 808 F.2d 842 (TECA 1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 525 (1987), would be controlling "[o]n the issue of whether there should be pre-judgment interest" in this case.

*Southland* held that "the doctrine of sovereign immunity precludes an award of pre-judgment interest against [the Department of Energy]." *Id.* at 845. *Southland* applied the principle that "in the absence of a specific or express consent by Congress, interest does not run on a claim against the United States." *Id.* at 846.

It does not appear that Congress has waived the immunity of the Department to pre-judgment interest.[7] We therefore find that pre-judgment interest for the period between when Consumers first became entitled to benefits to the September 8, 1982 judgment was properly disallowed.

The next amount of interest we will address is the interest for the period between the September 8, 1982 judgment and the establishment of the escrow account. As we have previously held, the judgment in this case was not final until entry of the June 22, 1987 disbursement order, which means that the interest for the period in question also must be classified as pre-judgment interest. The award of this interest is also, therefore, governed by this Court's decision in *Southland Oil.*

*Southland Oil* involved a situation similar to the one presently before this Court. The Department, through the Office of Hearings and Appeals (OHA), determined that Southland had received excessive exception relief during 1977 and 1978. Southland was required to purchase an additional $13.4 million in entitlements to make up for the excess relief.

Southland brought suit in federal court seeking declaratory and injunctive relief. The district court issued a preliminary injunction which required the Department to issue an entitlements notice with a credit to Southland equal to the sum which Southland had paid for excess relief. The district court directed Southland to place this money in an interest-bearing escrow account. This fund was designed to repay Southland to the extent that it prevailed before the Federal Energy Regulatory Commission (FERC), where the OHA order was being challenged.

On October 18, 1983, FERC issued a proposed order finding that OHA improperly calculated Southland's exception relief and directing that Southland receive further entitlement transfers in compensation. On May 8, 1984, the FERC order became final.

On June 28, 1984, the Department decided not to issue further entitlement notices, but would initiate proceedings to determine how to implement outstanding exception relief. The Department further decided that it would use crude oil overcharge funds to pay the outstanding exception re-

---

7. Consumers argued that the Department has waived its sovereign immunity in its own regulations governing distribution of crude oil overcharge funds from which Consumers says its benefits were paid, as the Department regulations in Subpart V provide "the aggregate amount of all refunds approved by the Office of Hearings and Appeals ... shall not exceed the amount to be remitted pursuant to the relevant Department of Energy enforcement order, plus any accumulated interest." 10 C.F.R. sec. 205.-286(a). As this provision was created by the Department and not Congress, we find that it does not waive the Department's sovereign immunity on pre-judgment interest. *See also infra* page 1578 & n. 8 for discussion of post-judgment interest.

lief if the OHA found that refiners were injured as a class.

In July, 1985, the district court held that the Department had an "unconditional and non-discretionary obligation" to pay Southland. The Department established separate interest-bearing accounts which were designed to be released upon the conclusion of litigation in *Texaco v. Department of Energy,* which involved litigation over the entitlement program. *See infra* n. 8. The district court ordered full restitution to Southland, including interest on the amount due from May 8, 1984, the date of the FERC order. The Department paid Southland on December 20, 1985, but included interest only from October 2, 1985, which was the day on which the escrow account was created. The Department appealed the court's order of interest from May 8, 1984 to October 2, 1985.

The TECA found that the doctrine of sovereign immunity precluded an award of pre-judgment interest against the Department, finding that:

[t]his obligation had nothing to do with the overcharge fund. The importance of the fund is simply that DOE chose to pay its liability out of that fund if *Texaco, supra,* was reversed, which it was. The choice by DOE of how it would pay the judgment has no bearing on whether sovereign immunity applies to the judgment itself. If the overcharge fund did not exist, DOE would have had to pay the judgment some other way.

*Id.* at 846.

Although we note, as this Court did in *Southland,* that strong policy consideration would support granting an award of interest to Consumers, we are bound by the decision in *Southland.* Absent an *en banc* decision to alter *Southland,* or a Supreme Court ruling, we must find that the district court's award of pre-judgment interest in the present matter was in error.

We therefore find that the award of interest for the period between September 8, 1982 and the establishment of the escrow account should be reversed.[8]

---

8. Consumers argues that the Department has waived its sovereign immunity either through its regulation or through its conduct. As we have previously held, *see supra* note 7, the Department cannot waive its immunity through its own regulation. Consumers argues that the Department's establishment of interest-bearing escrow accounts acts as a waiver of sovereign immunity. We disagree.

A series of administrative decisions established that the Department will pay interest during the post escrow period. The Department established that if the OHA determined that refiners as a class were "injured by violations or alleged violations of the EPA regulations, the OHA should fund receive orders from that portion of refund money which corresponds to the injury sustained by refiners as a class." 50 Fed.Reg. 1919, 1921 (Jan. 14, 1985). *See also In re Dep't. of Energy Stripper Well Exemption Litigation,* 578 F.Supp. 586 (D.Kan.1983).

On June 21, 1985, OHA found that refiners had been injured as a class due to crude oil overcharges. 50 Fed.Reg. 27402 (July 2, 1985). This decision thus activated the earlier decision by the Department to pay recoveries to the refiners. The Department faced one further obstacle, however, as the United States District Court in Delaware had invalidated the Department's decision to terminate the entitlement program without issuing further notices. *See Texaco, Inc. v. United States Dep't. of Energy,* 604 F.Supp. 1493 (D.Del.), *rev'd,* 795 F.2d 1021

(1986). The OHA determined that if *Texaco* should be reversed on appeal, refiners should be paid from the crude oil overcharge fund, 50 Fed.Reg. at 27403, and ordered that "any payment pursuant to the order will be placed in an interest-bearing escrow account pending the outcome of the litigation." 50 Fed.Reg. at 27403 n. 1.

OHA established interest-bearing escrow accounts for refiners holding receive orders. *Amber Refining Inc. et al.,* 50 Fed.Reg. 41572 (Oct. 11, 1985). Claims by Southland and Consumers were included in the *Amber* order. Some claims, including Consumers's, asserted a claim for retroactive interest. OHA rejected these claims, stating that:

[b]ecause we would pay the receive order amount set forth in the Appendix immediately upon issuing this decision if it were not for the pendency of the *Texaco* case before TECA, the Department has decided to let prospective interest accrue from the date on which the individual escrow accounts are established by the Controller. But the present situation is clearly unique and therefore does not constitute a concession on the part of the DOE that retroactive interest should be paid to these claimants.

50 Fed.Reg. 41572.

We find that the Department did not waive its immunity to interest by establishing these escrow accounts.

■ The interest for the third period, which reflects the time between the establishment of the escrow account and the disbursement, is slightly more complicated. The escrow account could be divided between the entitlement benefits due and interest on the entitlement between September 8, 1982 and the establishment of the account (the interest). Both of these parts of the escrow account gained interest after the establishment of the account. Because we have reversed the district court for the Department to fund the payment of the "interest" portion of the account, the portion of the account reflecting "interest" paid in, as well as the interest which the "interest" earned after creation of the account, would have to be adjusted. Thus, the only proper items in the escrow account should be the sum which reflects the "entitlement" and any interest which the entitlement earned. We remand this case to the district court with direction to bring the escrow payments in line with this decision.

### B. *TECA Nos. 6–37 & 6–38: The Attorney Fees*

The Department appeals in TECA No. 6–37 from the district court's award of attorney fees to Consumers for certain stages of the litigation. Consumers appeals in TECA No. 6–38 from the district court's refusal to grant it attorney fees for other stages of the litigation. Our review in these appeals will be directed to whether the district court abused its discretion in granting these fees and whether the district court correctly applied the Equal Access to Justice Act in reaching its decision to grant the fees.

The Department alleges in TECA No. 6–37 that no agency act or omission justified an award of attorney fees. It contends the magistrate incorrectly classified its opposition to the mandamus motion and sequestration order as unreasonable and unsupportable in light of the district court's ultimate acceptance of the agency's

position. The Department also alleges that the magistrate mischaracterized its conduct in the *Texaco* litigation and that the district court's reliance on *Southland* was misplaced as the district court in *Southland* denied a request for fees. We find that the district court did not abuse its discretion in granting these fees.

More troublesome is the basis upon which the attorney fees in this case rest. As the Department is part of the United States Government, an award of attorney fees must come within the waiver of sovereign immunity for such fees. The United States has waived its immunity to attorney fees in certain circumstances enumerated in the Equal Access to Justice Act (EAJA), 28 U.S.C. section 2412(b).[9] This waiver is subject to the qualification in 28 U.S.C. section 2412(d)(1)(A) that fee awards are appropriate "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

After this threshold is reached, the United States "shall be liable for such fees and expenses to the same extent that any other party would be liable under the terms of any statute which specifically provides for such an award." 28 U.S.C. section 2412(b).

The legislative history makes clear that the new Act amended old 28 U.S.C. section 2412:

[t]o permit a court in its discretion to award attorney fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties. Thus, the United States would be liable for fees under the "bad faith," "common fund," and "common benefit" exceptions to the American Rule. There appears to be no justification for exempting the United States in these situations.

1980 U.S.Code Cong. & Admin. News 4953 at 4989.

---

**9.** Section 2412(b) provides:

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsec-

tion (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.

The district court, declining to find that the Department had acted in "bad faith," applied the "in the interest of justice" standard of *Grinnel Bros., Inc. v. Touche Ross & Co.*, 655 F.2d 725 (6th Cir.1981), in awarding attorney fees to Consumers. While *Grinnel* has not achieved wide acceptance outside of the Sixth Circuit, the case is supported in the Supreme Court decision in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), which stated:

Although the traditional American Rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interest of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery."

*Id.* at 4, 93 S.Ct. at 1946 (citations omitted).

■ The Supreme Court in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1978), also took steps to outline the exceptions to the American Rule on attorney fees. While *Alyeska* specifically recognized exceptions for "willful disobedience of the court order," or when a losing party "acted in bad faith, vexatiously, or for oppressive reasons," *id.* at 258–59, 95 S.Ct. at 1622, more generally it held that a court's power to issue fees in such cases arose out of the interest of justice.[10] Had this issue

come before this Court in a different context, we may have taken a different view of the "in the interest of justice" standard, but as a court of special jurisdiction, we are persuaded to follow the law of the particular regional circuit court where appeals from the district court would normally lie in matters not unique to the special jurisdiction. *See Sun Tek Industries v. Kennedy Sky Lites, Inc.*, 848 F.2d 179 (Fed.Cir. 1988); *Panduit Corp. v. All State Plastic Manufacturing Co.*, 744 F.2d 1564 (Fed. Cir.1984). As *Grinnel* remains the law of the Sixth Circuit, we will apply it to the present case.[11]

■ We also do not find that *Grinnel* is inconsistent with the legislative intent behind the EAJA. Although the legislative history outlines several common law exceptions to the "American Rule," we find that the legislative history only quotes the exceptions to the American Rule generally recognized and does not negate the equitable authority of the "in the interest of justice" standard. *Grinnel* and the legislative history are therefore not inconsistent.

As *Grinnel* is currently the law of the Sixth Circuit and is in line with the legislative history behind the EAJA, we find that the district court was not in error in applying *Grinnel*'s standard. We further find that the district court did not abuse its discretion in finding that attorney fees were warranted under the "in the interest of justice" standard based on the conduct of the Department in this litigation.

The district court, however, has omitted two crucial steps in the analysis prescribed by the EAJA. First, for the EAJA's waiv-

10. Justice Marshall, in a dissent in *Alyeska,* accused the majority of dismantling the *Hall v. Cole* "in the interest of justice" equity standard. *Alyeska Pipeline,* 421 U.S. at 272, 95 S.Ct. at 1629 (Marshall, J., dissenting). We are not of the position that the Court's opinion in *Alyeska* precludes the Sixth Circuit's use of the "in the interest of justice" standard.

11. *Grinnel* has been criticized and limited both outside of the Sixth Circuit, *see Howard v. Group Hosp. Serv.,* 618 F.Supp. 38, 41 & n. 4 (W.D.Okl.1984), and inside. See *Pravic v. United States Industries–Clearing,* 109 F.R.D. 620, 622–23 (E.D.Mich.1986) (suggesting that *Grinnel* is limited to cases involving "improvident re-

moval" of state actions to federal court). *See also Kasprowicz v. Capital Credit Corp.,* 524 F.Supp. 105, 106–07 (E.D.Mich.1981) (applying *Grinnel* in the context of improvident removal). Recent Sixth Circuit authority involving the attorney fee issue have also not referred to or applied the *Grinnel* "in the interest of justice" standard. *See, e.g., Shimman v. International Union of Auto. Eng.,* 744 F.2d 1226 (6th Cir. 1984); *Toth v. United Auto. Aero. and Agrio. Implement Workers,* 743 F.2d 398 (6th Cir.1984). The Sixth Circuit, however, has taken no action to limit or reverse the *Grinnel* decision. We will, therefore, treat *Grinnel* as the law of the Sixth Circuit.

er of sovereign immunity to apply, the district court must consider whether the position of the United States was substantially justified or whether special circumstances make an award unjust. A finding of either is sufficient to prevent an award of attorney fees which otherwise would be appropriate.

Second, to reach the discussion of the appropriate basis for holding the United States liable for attorney fees, the district court also must determine that Consumers is "the prevailing party" in this litigation. This includes analysis of the extent to which Consumers has prevailed.

In making both of these findings, the district court must interpret the fee statute in the light of the statutory provisions it was designed to effectuate. *Sullivan v. Hudson*, — U.S. ——, ——, 109 S.Ct. 2248, 2255–57, 104 L.Ed.2d 941 (1989). For the EAJA, that purpose is "to diminish the deterrent effect of seeking review of, or defending against, government action." *Id.*

### 1. *Substantial Justification*

■ We turn first to the issue of substantial justification. The statute provides that attorney's fees shall be awarded "unless *the court finds* that the position of the United States was substantially justified," 28 U.S.C. section 2412(d)(1)(A) (emphasis added). To deny attorney fees, the statute requires a specific finding. The phrasing "emphasizes the fact that the determination is for the district court to make, and thus suggests some deference to the district court upon appeal." *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988).

"[S]ome of the elements that bear upon whether the Government's position '*was* substantially justified' may be known only to the district court. Not infrequently, the question will turn upon not merely what was the law, but what was the evidence regarding the facts." *Id.* (emphasis in original). Because "the district court may have insights not conveyed by the record," and because the question of substantial justification is "little susceptible ... of use-

ful generalization," the Supreme Court makes it clear that a finding of substantial justification is one to be made by the trial court and reversed only for abuse of discretion. *Id.* 108 S.Ct. at 2547–48.

We direct the district court to reconsider the attorney fees award in this case to determine whether the Government's position was "substantially justified." In doing so, we direct the Court's attention to the discussion in *Pierce* of the meaning of the phrase "substantially justified" as used in 28 U.S.C. section 2412(d)(1)(A). *Id.* 108 S.Ct. at 2549–51. In substance, the Supreme Court instructs that the phrase connotes "justified in substance or in the main," and not "justified to a high degree." *Id.* at 2550.

Anticipating that the parties may be tempted to challenge the outcome of the district court's reconsideration, we direct their attention to the abuse of discretion standard adopted by the Supreme Court in *Pierce*. The Court ultimately concludes the "[r]espondent's side of the case has *at least sufficient force* that we cannot possibly state, on the basis of [the suggested] objective indications alone, that the district court abused its discretion in finding no substantial justification." *Id.* 108 S.Ct. at 2552 (emphasis added). In any appeal, this Court will adopt the Supreme Court standard that a reversal is appropriate only if the facts *command* a conclusion opposite from that reached by the district court. *Id.* at 2553.

We also highlight and commend to the litigants the Supreme Court's repeated admonition that a " 'request for attorney's fees should not result in a second major litigation.' " *Pierce*, 108 S.Ct. at 2549 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

### 2. *Prevailing Party*

■ The district court also must determine whether, and to what extent, Consumers is the prevailing party in this litigation. To determine if a party has prevailed for the purpose of awarding attorney fees under the EAJA, the court may look to the

substance of the litigation's outcome. *Omaha Tribe of Nebraska v. Swanson*, 736 F.2d 1218, 1220 (8th Cir.1984) (citation omitted).

To be considered prevailing for the purpose of receiving attorney fees, the party need not succeed on all the issues. "It is enough if a party succeeds on any significant issue which achieves some of the benefit that the party sought in bringing the suit." *Id.* at 1220–21 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also, Texas State Teachers' Ass'n v. Garland Indep. School Dist.*, 489 U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

Where a lawsuit consists of related claims, a plaintiff who won substantial relief should not have his attorney fees reduced simply because the district court did not adopt each contention raised. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943–44, 76 L.Ed.2d 40 (1983). It is not necessarily significant that the prevailing party did not recover all the relief requested. *Id.* at 436, n. 11, 103 S.Ct. at 1940, n. 11. However, where the plaintiff achieves only limited success, the court should award only that amount of fees that is reasonable in relation to the result obtained. *Id.* at 440, 103 S.Ct. at 1943–44.

"Where the plaintiff failed to prevail on a claim that is distinct *in all respects* from his successful claims, the hours spent on unsuccessful claims should be excluded in considering the amount of a reasonable fee." *Id.* (emphasis added).

The Court notes that cases involving such unrelated claims may be "unlikely to arise with great frequency." *Id.* at 435, 103 S.Ct. at 1940. Instead, a case usually will have a core of common facts or be based on related legal theories. "Such a lawsuit cannot be viewed as a series of discrete claims." *Id.*

However, where the plaintiff presents in one lawsuit *distinctly different* claims for relief based on different facts and legal theories, work expended on unsuccessful claims is not "expended in pursuit of the ultimate result achieved." In such a suit, therefore, no fees should be awarded for

service on the unsuccessful claim. *Id.* at 434–35, 103 S.Ct. at 1939–40.

Whether a court engaged in this analysis should individually evaluate each issue in a case for the purpose of determining the prevailing party is essentially a matter of judgment for the court. "This decision is closely tied to the unique facts of each case." *Devine v. Sutermeister*, 733 F.2d 892, 896 (Fed.Cir.1984). "It is difficult to generalize whether a 'phase' [of litigation] is 'sufficiently significant and discrete to be treated as a separate unit' for the purposes of an award of attorney fees." *Id.* (quoting *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir.1974)).

The Federal Circuit in *Devine* cites with approval the Ninth Circuit's caution against routinely dissecting litigation into all of its component parts. It concludes, "a prevailing party should not be denied fees for its failure to prevail on every ... claim where there is no clear distinction between the former and that party's ultimate success on the merits." *Id.* at 897.

"The result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. "A court should look to the substance of the litigation to determine whether an applicant has *substantially* prevailed in its position, and not merely the technical disposition of the case.... In effect, substance should prevail over form." *Devine*, 733 F.2d at 898 (emphasis in original).

The most crucial factor is the degree of success obtained. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. The district court should focus on the significance of overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id.* at 435, 103 S.Ct. at 1940. A reduced fee award may be appropriate if the relief obtained, however significant, is limited in comparison to the scope of the litigation as a whole. *Id.* at 440, 103 S.Ct. at 1943–44.

As in *Hensley*, the district court award in this case may be consistent with our holding, but we are unable to affirm because the district court did not specifically consid-

er the relationship between the extent of success and the amount of fee award.

We therefore reverse the award of attorney fees and remand to the district court for reconsideration consistent with this opinion.

First, however, we must resolve two final issues concerning attorney fees. The Department also argues that Consumers violated Local Rule 17(n) of the Eastern District of Michigan concerning timely application for attorney fees.[12] Consumers applied for attorney fees thirty days after entry of the disbursement order but twenty-three months after issuance of the sequestration order. As we have previously stated that the date of the final judgment was the date of entry of the distribution order, we find the Department's contention without merit. We therefore find that Consumers's application for attorney fees was timely and do not disturb the Court's award of attorney fees to Consumers on that basis.

Finally, we reject Consumers's claim that the district court abused its discretion in denying fees for the phase of litigation between the announcement of the Department's decision on entitlement programs and Consumers's motion for mandamus relief. The magistrate and the district court found that the Department's actions during

this period were proper, and that the Department would have been remiss if it had not advanced the arguments which it did. We find that the district court did not abuse its discretion in making this finding, and therefore affirm the district court's denial of Consumers's application for additional fees.

### III.

For the reasons stated above, in TECA No. 6–36, we REVERSE the decision of the district court and REMAND the case to the district court for further proceedings in accordance with this opinion; in TECA No. 6–37, we REVERSE the decision of the district court to award attorney fees to Consumers for certain stages of the litigation and REMAND that issue to the district court for reconsideration consistent with this opinion; and in TECA No. 6–38, we AFFIRM the decision of the district court in denying Consumers's application for additional attorney fees.

IT IS SO ORDERED.

---

12. Local Rule 17(n) provides as follows:
    Except as otherwise provided by statute or by order of the Court, an application for attorney fees by a prevailing party together with a supporting memorandum shall be filed within 30 days after the entry of judgment. Failure to file the application within the time specified shall be considered a waiver of the right to attorney fees.